**R. V. ARCHAWSKI et al., Libellants-Appellees,**

**v.**

**Basil HANIOTI, etc., et al., Respondents,**
**Basil Hanioti, etc., Respondent-Appellant.**

**No. 319, Docket 23566.**

United States Court of Appeals
Second Circuit.

Argued April 20 and 21, 1955.

Decided June 3, 1955.

Harry D. Graham, New York City, for libellants-appellees.

Leonard Altschul, New York City (Samuel Bader, New York City, of counsel), for respondent-appellant.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

MEDINA, Circuit Judge.

The record before us presents a maze of complications, procedural and otherwise. Of the various points raised, however, it is necessary to discuss but one, as we have concluded that there was no jurisdiction in admiralty and, there being no other alleged basis of federal competence, the case must be dismissed.

The libel, by several hundred prospective passengers on the "City of Athens", a vessel of Honduran registry, names as respondent Basil Hanioti, and he is sued "individually, and doing business as Sociedad Naviera Transatlantica, S.A., Compania De Vapores, Mediterranea, American Mediterranean Steamship Line, Ltd., American Mediterranean S/S Agency, Inc., and Basile Shipping Company, Inc.," it being alleged that the concerns whose names are thus set forth are "ostensible firm names," in fact mere "alter egos" of Hanioti, who is accordingly described as the owner of and in control of the "City of Athens." The use of these alter egos or "mere shams" is alleged to be part of "a designed plan for the purpose of shielding himself from possible liability for the fraudulent acts hereinafter stated and by virtue of which the respective libellants have each been damaged."

It is then alleged that between November 9, 1946, and July 23, 1947, Hanioti and his alter egos "then being hopelessly insolvent, unbeknown to any of the libellants," advertised the "City of Athens" as a common carrier of passengers for hire, that libellants paid certain sums as passage money for a voyage scheduled for July 15, 1947, and that both the voyage and the vessel were abandoned by Hanioti. The balance of the libel is devoted to an enumeration of various fraudulent practices said to have been resorted to by Hanioti, such as secreting himself and his assets, maintaining "a secret residence in New York the location of which, after due diligence, cannot be found," and otherwise defrauding libellants of the moneys they had paid. The libel avers that the moneys were "collected to the respondent's account" and that they "were wrongfully and deliberately applied to his own use and benefit in reckless disregard of his obligations to refund the same."

██ While a contract for the transportation of passengers by sea is a maritime contract, and a suit for its enforcement would plainly be within the admiralty jurisdiction of the District Court, this libel sets forth no such claim, but rather is in the nature of the old common law *indebitatus assumpsit*, for money had and received, based upon the wrongful withholding of moneys by respondent, on the theory that in equity and good conscience he is under a duty to pay them over to libellants. Silva v. Bankers Com-

**408**

mercial Corporation, 2 Cir., 1947, 163 F. 2d 602; United Transportation & Lighterage Co. v. New York & Baltimore T. Line, 2 Cir., 1911, 185 F. 386. If the libel is viewed as stating some sort of a claim based upon tortious conduct in the nature of fraud, as seems to have been the intent of the pleader, the case against admiralty jurisdiction is even clearer.

Reversed and remanded to the District Court for dismissal for lack of admiralty jurisdiction.